Kohinoor Coal Company v. Commissioner.
Kohinoor Coal Co. v. Commissioner
Docket No. 52496.
United States Tax Court
T.C. Memo 1956-79; 1956 Tax Ct. Memo LEXIS 217; 15 T.C.M. (CCH) 403; T.C.M. (RIA) 56079; March 30, 1956
*217 C. H. Welles, 3d, Esq., for the petitioner. Stephen P. Cadden, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The Commissioner has determined a deficiency of $26,361 in the petitioner's income tax for the fiscal year ended June 30, 1950. Issues presented for determination are the correctness of the respondent's action (1) in disallowing $86,995.58 of the deduction taken by petitioner for depreciation, (2) in eliminating from taxable income an amount of $15,800 reported by petitioner as rental income, and (3) in determining that petitioner was entitled to an additional deduction of $2,774.81 for Pennsylvania income tax. Findings of Fact The petitioner is a Pennsylvania corporation organized in July 1940 and has its principal place of business at Shenandoah, Pennsylvania. It filed its income tax return for the fiscal year ended June 30, 1950, with the collector of internal revenue for the twelfth district of Pennsylvania. Continuously since its organization, the petitioner has been engaged in the business of mining, preparing and selling anthracite coal. Hammond Coal Company, sometimes hereinafter referred to as Hammond, *218 is a Pennsylvania corporation organized in January 1939 and has its principal place of business at Girardville, Pennsylvania. During the taxable year involved herein, as well as before and afterwards, it also was engaged in the mining of anthracite coal. Its operations were conducted in an area about 5 miles distant from where petitioner's operations were conducted. Robert L. Birtley, who has been in the coal mining business since 1913, was president, general manager, and principal stockholder of petitioner and of Hammond during the taxable year here involved, as well as before and afterwards. In February 1947 the petitioner purchased from J-Dale Stripping Company a Marion electric dragline shovel with a bucket capacity of 4 cubic yards at a cost of $90,000. The shovel had been in use approximately one and one-half years when petitioner purchased it. Thereafter the petitioner acquired auxiliary equipment for the shovel at a cost of $7,200, thus making the total cost for the shovel and equipment $97,200. Subsequently during February 1947, the petitioner executed its demand promissory note for $70,000 to the Markle Banking and Trust Company, Hazleton, Pennsylvania, for a loan and *219 also executed to that company a chattel mortgage on the Marion shovel as security for the payment of the note. The loan bore interest at the rate of 6 per cent per annum and the mortgage provided for repayment of the principal of the loan in monthly installments beginning in April 1947. During the period April 16, 1947, to March 17, 1949, the petitioner repaid the loan. E. H. Witney, Shenandoah, Pennsylvania, conducted a general contracting and coal stripping business as an independent contractor under the name of Kingston Contracting Company, sometimes hereinafter referred to as Kingston. For 15 years prior to 1947 Kingston had done work for one or more corporations with which Birtley had been connected. At the time petitioner acquired the Marion shovel, Kingston was engaged in performing with its own equipment a contract which it had with the petitioner. Hammond had land from which it desired to have the overburden and the coal in the "Buck Mountain" vein removed. Kingston did not own enough equipment to perform the work desired by Hammond and at the same time perform its contract with petitioner. Following some negotiations with petitioner respecting the Marion shovel, Kingston *220 on April 2, 1947, made a proposal to Hammond to do the mining work Hammond desired to have done. Pursuant to the proposal Hammond contracted with it to do the work. The contract contemplated that in the performance thereof Kingston would use, among other equipment, the petitioner's Marion shovel. Subsequently, in April 1947, Kingston began operations on the Hammond land. At that time, the petitioner delivered the Marion shovel to Kingston under an arrangement which provided that the shovel was to be entirely under Kingston's management and supervision, including all repairs and upkeep, that Kingston would pay petitioner $3,300 per month, starting 60 days after the beginning of operations and continuing until the amount of $97,200, plus 4 per cent thereof, had been paid, at which time title to the shovel should pass to Kingston. Kingston sustained losses in its operations under the Hammond contract. After being unable to obtain from Hammond any concessions with respect to the contract, Kingston abandoned its operations on the Hammond land in May 1948. At the same time, Kingston surrendered the Marion shovel to the petitioner and abandoned its arrangement with the petitioner with *221 respect to the shovel and its rights under the arrangement. Hammond, being unable to obtain an independent contractor to complete the work begun by Kingston, performed the work itself using the Marion shovel which petitioner rented to it. From the time it began operations on the Hammond land in April 1947 until the time it abandoned such operations in May 1948, Kingston paid the petitioner a total of $38,500 under its arrangement with the petitioner respecting the shovel. It paid nothing further. As and when the payments were made, they were not recorded on the petitioner's books as rental and reported as income by petitioner in its income tax returns but were recorded as a deposit on the purchase price of the shovel and treated as a contingent liability of the petitioner pending the time when Kingston would complete payments totaling $97,200 plus 4 per cent thereof. In a settlement between petitioner and Kingston for certain work done by Kingston for the petitioner in 1953, Kingston on April 25, 1953, executed to petitioner a general release in which it released and discharged petitioner from all claims and demands which it had ever had or then had against the petitioner by *222 reason of any cause or thing whatsoever. The relase made no specific mention of any claim by Kingston against the petitioner on account of payments made with respect to the Marion shovel or with respect to any other specific matter. Thereafter, on June 30, 1953, the close of its fiscal year ended on that date, the petitioner transferred to income the above-mentioned $38,500 paid by Kingston and theretofore carried on its books as a contingent liability and in its income tax return for that year reported the amount as income. After including the $38,500 as income, the petitioner sustained a net loss for the fiscal year ended June 30, 1953. During the petitioner's fiscal years ended June 30, 1949, and June 30, 1950, Hammond paid to it as rentals for the use of the Marion shovel the amounts of $20,516 and $15,800, respectively. These amounts were entered by petitioner on its books as income and were reported as such in its income tax returns for the respective years. In determining the deficiency involved herein, the respondent eliminated the $15,800 from the petitioner's income. In determining the deficiency in controversy, the respondent made determinations as follows relative to *223 shovels and trucks with respect to which the petitioner took deductions for depreciation during the taxable year in question: Depreciation
Estimated
allowed or
Date
useful
Cost or
allowable
Assets
acquired
life
other basis
to 7/1/49
Shovels
#1 Marion (used) *
10/18/47
10 yrs.
$ 97,200.00
#2 P & H (new)
10/14/48
10 yrs.
118,745.42
$5,937.27
#3 P & H (used)
9/13/49
7 yrs.
70,000.00
#4 Northwest (used)
11/13/49
7 yrs.
38,000.00
#5 P & H 3/4 (new)
11/ 9/49
10 yrs.
15,050.00
Trucks
2 Euclid (new)
11/18/49
6 yrs.
45,493.30
Totals
Total depreciation taken on
return
Depreciation disallowed
Deprecia-
tion allow-
Unrecov-
Deprecia-
able for
ered basis
tion taken
year ended
Assets
at 7/1/49
on return
6/30/50
Shovels
#1 Marion (used) *
$ 60,750.00
#2 P & H (new)
$112,808.15
29,686.35
$ 11,874.54
#3 P & H (used)
70,000.00
8,750.00
5,000.00
#4 Northwest (used)
38,000.00
4,750.00
2,714.28
#5 P & H 3/4 (new)
15,050.00
1,505.00
752.50
Trucks
2 Euclid (new)
45,493.30
5,686.66
3,791.11
Totals
$111,128.01
$ 24,132.43
Total depreciation taken on
111,128.01
return
Depreciation disallowed
$ 86,995.58
*224 The #2 P & H shovel is a "four-yard straight front" shovel. It was purchased new by the petitioner in July 1948 for $118,745.42. The #3 P & H shovel was purchased by petitioner in September 1949 for $70,000 and had been used approximately one and one-half years at that time. The #4 Northwest shovel was purchased by petitioner in October 1949 for $38,000. It was a 1 1/2 yard shovel which had been used slightly over 2 years when purchased by petitioner. This shovel was used by petitioner as coal loading equipment and was sold by petitioner for an undisclosed amount on some undisclosed date prior to the hearing herein. The #5 P & H shovel was purchased new by petitioner in November 1949 for $15,050. It is a 3/4 yard shovel. The two Euclid trucks were purchased by petitioner in November 1949 for $45,493.30. These are strongly constructed trucks used for hauling overburden out of stripping pits and have a capacity of 15 cubic yards. The Marion, Northwest and P & H shovels and the Euclid trucks during the fiscal year ended June 30, 1950, were used in operations *225 on Hammond land. During that year the foregoing equipment was operated on three shifts of 7 hours each for 5 days a week and occasionally for 6 days a week. The 3 hours a day during which the equipment was not in operation were taken up in greasing, servicing and otherwise maintaining the equipment in a good state of repair and operation. The Marion shovel, while operated by Kingston and later by Hammond, was maintained in a like state of repair and operation. All the equipment was standard equipment and when purchased by petitioner was suitable for the particular jobs for which used in the fiscal year ended June 30, 1950. The manufacturers of such equipment are still in business and parts for repairs and replacements are readily available. At the time of the hearing of this proceeding in 1955, the Marion and P & H shovels and the Euclid trucks here involved were still being used by the petitioner for the purposes for which the petitioner acquired them. From and after May 1948, when Kingston surrendered the Marion shovel to petitioner, the petitioner was the owner of the shovel with a basis of $58,700 for depreciation purposes. During the fiscal year ended June 30, 1950, the petitioner *226 was entitled to a depreciation deduction of $8,385.71 on account of the shovel. Opinion The petitioner concedes that the deduction of $60,750 taken in its return for the taxable year in question for depreciation on the Marion shovel was excessive. However, it contends that for the taxable year it was entitled to take depreciation on the shovel on the basis of a cost of $97,200 and a useful life of 4 years, or in an amount of $24,300. The respondent takes the position that in April 1947 the petitioner sold the shovel to Kingston, that during the taxable year Kingston, not the petitioner, was the owner of the shovel and that accordingly the petitioner had no depreciable interest in the shovel and was not entitled to take any deduction for depreciation with respect thereto. The evidence respecting the terms of the arrangement under which the petitioner delivered the Marion shovel to Kingston and the latter's use of, payments with respect to, and surrender of, the shovel and the petitioner's actions with respect to the transaction as a whole is somewhat confusing. However, we think it establishes the facts we have found with respect to the matters involved. There is some testimony *227 to the effect that after Kingston surrendered the shovel to the petitioner in May 1948 it claimed that by its payments, totaling $38,500, it had acquired an equity in the shovel and that this claim was not finally disposed of until April 25, 1953, when Kingston in a settlement for work it had done for the petitioner in 1953 executed to the petitioner a general release. However, from a consideration of that testimony in connection with other evidence bearing on the question, we are unable to find that Kingston seriously advanced any claim of that character. Whatever may have been Kingston's rights under its arrangement with petitioner respecting the shovel during the period it used the shovel, we think, from the record presented, that it abandoned them at the time it surrendered the shovel to petitioner, and we have so found. The Marion shovel and auxiliary equipment cost the petitioner $97,200. Kingston, under its arrangement with the petitioner respecting the shovel, paid petitioner $38,500, no part of which appears even to have been repaid or refunded or credited to Kingston. Therefore the petitioner's investment in the shovel after Kingston's surrender of it in May 1948 was $58,700, *228 and not $97,200 as petitioner contends. In addition to contending that the deduction for depreciation on the Marion shovel for the year in question should be computed on the basis of a useful life of 4 years, the petitioner contends that depreciation deductions should be computed on a life of 4 years for the #3 P & H and #4 Northwest shovels, which had been used when purchased by petitioner, on a life of 5 years for the #2 and #5 P & H shovels, which were new when purchased by petitioner, and on a life of 4 years for the Euclid trucks, which also were new when purchased by petitioner. As we understand the position of the petitioner, it rests the foregoing contention on two grounds, namely, (1) that the equipment depreciated at an accelerated rate during the taxable year by reason of its having been used on three 7-hour shifts a day during that year and (2) that by reason of the small capacity and short booms the shovels were obsolete for use in anthracite coal stripping at the time of the hearing herein in 1955 and that the trucks because of their small capacity also were obsolete. As to the first of the foregoing grounds, the petitioner has shown that equipment of the character *229 of that here involved is normally used on only one 7-hour shift a day but has not shown the normal useful life when so used. The petitioner's returns for the fiscal years ended June 30, 1948, and June 30, 1949, indicate that petitioner computed depreciation on the Marion shovel, which was a used shovel when acquired by petitioner, on the basis of a life of 10 years. The return for the fiscal year ended June 30, 1949, also indicates that depreciation on the #2 P & H shovel, which was a new shovel when acquired by petitioner, was computed on the basis of a life of 10 years. The remainder of the equipment in question was acquired by petitioner during the fiscal year in controversy, and its use in that year was the petitioner's first use of it. The question of the effect of extra usage on the estimated useful life of an asset has been considered by us on a number of occasions, and we have held that, in addition to showing extra usage of the asset, the taxpayer must also show that such extra usage did actually reduce the estimated useful life of the asset. ; ; , *230 affirmed on this point ; . The petitioner has not shown that the extra usage of the equipment for the year in question shortened the lives of the equipment below those determined by respondent. The petitioner's position as to the obsoleteness of the equipment rests on the testimony of its president to the effect that the equipment was obsolete because presently larger and more efficient equipment than that of the petitioner is being manufactured and that, if he were now purchasing equipment, he would purchase the newer and larger equipment. As was said in : "In general, obsolescence is a process whereby property, as a result of external causes as distinguished from deterioration in its physical condition, becomes obsolete by losing its economic usefulness for the purpose for which it was acquired, and by being useless for any other purpose. * * *" Whatever may be the advantages of the larger equipment now being manufactured over the equipment of petitioner, the petitioner's president testified that equipment with the capacity of that of the *231 petitioner was still being manufactured and that there was work in strip mining for which such equipment, as well as the equipment of the petitioner, is suited. Furthermore, at the time of the hearing, all of the equipment here involved, except the #4 Northwest shovel which had been sold by the petitioner, was being used by the petitioner in its mining operations for the purposes for which acquired, and the evidence fails to indicate as to when its usefulness probably will be ended. In this situation, we conclude that a proper basis for an allowance for obsolescence has not been shown. In view of what has been said above, we are unable to find that for the taxable year the petitioner was entitled to depreciation allowance on the #3 P & H shovels, the Northwest shovel and the Euclid trucks computed on the basis of any shorter useful lives than those determined by respondent. On the ground that petitioner did not own the Marion shovel during the taxable year, the respondent did not allow petitioner any deduction for depreciation on the shovel. However, we have found that during the year the petitioner was the owner of the shovel with a basis of $58,700 for depreciation. Being unable *232 to find that the petitioner was entitled to a depreciation allowance for the taxable year computed on a shorter life than 7 years, we have found that it was entitled to a depreciation deduction of $8,385.71 for the year on account of the shovel. Since petitioner was the owner of the Marion shovel during the taxable year, the rentals of $15,800 paid to it by Hammond during the year for the use of the shovel constituted income taxable to petitioner and were properly reported by it as such. In a recomputation of the petitioner's tax liability under Rule 50 the rentals will be included in income. The remaining issue relates to the amount of the deduction allowable to petitioner for Pennsylvania income tax. Since a determination of this question is dependent upon a recomputation of the petitioner's income pursuant to our holdings herein on other issues, this issue, in accordance with the suggestion of the parties, will be disposed of at the hearing under Rule 50. Decision will be entered under Rule 50. Footnotes
*. Depreciation was not allowed on this shovel since it was deemed to have been sold prior to the taxable year ended 6/30/50.↩